UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THEODORE PARISIENNE,<br><br>        *Plaintiff,*<br><br>    vs.<br><br>HEYKOREAN, INC.,<br><br>        *Defendant.* | Docket No.: 1:19-cv-2257-VSB |

_____

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO SET ASIDE DEFAULT**
_____

B.J. Kim
KIM & BAE, P. C.
*Attorneys for Defendant*
*HeyKorean, Inc.*

40-21 Bell Boulevard
2nd Floor
Bayside, New York 11361
    and
2160 North Central Road,
Suite 303
Fort Lee, New Jersey 07024

Tel.: 201-585-2288
Fax: 201-585-2246

# **TABLE OF CONTENTS**

**TABLE OF CONTENTS** ...................................................................................................................... ii

**TABLE OF AUTHORITIES** ............................................................................................................... iii

**STATEMENT OF FACTS** .................................................................................................................... 1

**LAW AND ARGUMENT** ..................................................................................................................... 1

    I.    Standard to Set Aside Default Under Fed. R. Civ. P. 55(c) ............................................ 1

    II.   Defendant's Default in This Action was Not Willful ..................................................... 2

    III.  Plaintiff Will Not Be Prejudiced by Setting Aside the Entry of Default ................... 4

    IV.  Defendant Has Meritorious Defenses to Plaintiff's Allegations ................................. 5

        A)    *Fair Use* ....................................................................................................................... 5

        B)    *DMCA Safe Harbor* ................................................................................................... 6

**CONCLUSION** ...................................................................................................................................... 8

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 51 (2d Cir. 1996) ........................................ 5

*American Airlines Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57 (2d Cir. 1996) ............................ 1, 3

*Authors Guild, Inc. v. Google, Inc.*, 954 F.Supp.2d 282 (S.D.N.Y. 2013) ...................................... 6

*Davis v. Musler*, 713 F.2d 907 (2d Cir.1983) ............................................................................. 2, 4

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993) .......................................................... 1, 4

*Holzman Fabian Diamonds Ltd. v. R & E Diamonds LLC*, 2019 WL 1099944 (S.D.N.Y Mar. 8, 2019). ........................................................................................................................... 1, 2

*In re FairPoint Comm'cns, Inc.*, 462 B.R. 75  (Bankr.S.D.N.Y. 2012) .......................................... 2

*In re FKF 3, LLC*, 501 B.R. 491 (S.D.N.Y. 2013) ...................................................................... 2, 3

*In re Journal Register Co.*, No. 09–10769 (ALG), 2010 WL 5376278 (Bankr.S.D.N.Y. Dec. 23, 2010) .................................................................................................................................. 2

*In re JWP Info. Servs., Inc.*, 231 B.R. 209 (Bankr.S.D.N.Y. 1999) ............................................... 2

*Meehan v. Snow*, 652 F.2d 274 (2d Cir. 1981) .......................................................................... 1, 2

*S.E.C. v. McNulty*, 137 F.3d 732 (2d Cir. 1998) ........................................................................... 3

*Schlatter v. China Precision Steel, Inc.*, 296 F.R.D. 258 (S.D.N.Y. 2013) .................................... 3

*Swarna v. Al–Awadi*, 622 F.3d 123 (2d Cir. 2010) ....................................................................... 3

*Tripmasters, Inc. v. Hyatt Int'l Corp.*, No. 82 Civ. 6792(JFK), 1984 WL 1057 (S.D.N.Y. Oct. 23, 1984) ............................................................................................................................... 2, 3

*Viacom Intern., Inc. v. YouTube, Inc.*, 676 F.3d 19 (2d Cir. 2012) ............................................... 6

*Wolk v. Kodak Imaging Network*, *Inc.*, 840 F.Supp.2d 724 (S.D.N.Y. 2012) ............................... 7

**Statutes**

17 U.S.C. § 107 ............................................................................................................................ 5, 6

17 U.S.C. § 512 ....................................................................................................................... 5, 6, 7

**Rules**

Fed. R. Civ. P. 55 ..................................................................................................................... 1, 3, 4

Fed. R. Civ. P. 60 ............................................................................................................................ 1

**STATEMENT OF FACTS**

This memorandum of law will rely on the facts asserted in the accompanying Declaration of B.J. Kim ("Kim Decl.") and its Exhibits.

**ARGUMENT**

Defendant's default in this action was not willful, Defendant has meritorious defenses to Plaintiff's allegations, and the Plaintiff will not be prejudiced by the default being set aside. The Court should grant Defendant leave to file the proposed Answer, which accompanies this Motion (*see* Kim Decl. Ex. 3).

Defendant's counsel requested Plaintiff's counsel stipulate to setting aside the default and to allow Defendant additional time to answer or move. Kim Decl. ¶10. Plaintiff's counsel declined this request without explanation. *Id.*

### I.     Standard to Set Aside Default Under Fed. R. Civ. P. 55(c)

Fed. R. Civ. P. 55(c) provides "The court may set aside and entry of default for good cause." Fed. R. Civ. P. 55(c). Rule 55(c) does not define "good cause," but the Second Circuit has instructed that district courts must consider principally "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

The standard for setting aside an entry of default pursuant to Rule 55(c) is "lenient" and less rigorous than the standard for setting aside a default judgment pursuant to Rule 60(b). *See American Airlines Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996); *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) (describing the Rule 55(c) standard as "lenient"). A court must balance each of the *Enron* factors to determine if setting aside default is appropriate. *See Holzman Fabian Diamonds Ltd. v. R & E Diamonds LLC*, 2019 WL 1099944, *4 (S.D.N.Y Mar. 8, 2019).

1

In *Holzman*, this Court considered a defendant's motion to set aside entry of default where that defendant had not answered after two months of delay. The *Holzman* court found the defendant's delay to be willful. *Holzman*, 2019 WL 1099944 at *2. Regarding the second two *Enron* factors, the court found that the plaintiff would not suffer prejudice by setting aside the default, and that the meritorious defense factor slightly weighed in the defendant's favor. *Id.* at **2–3. Despite finding that the defendant's default was willful, the court granted the motion to set aside default after it weighed the factors against one another. *Id.* at **4–5.

## II. Defendant's Default in This Action was Not Willful

As a default judgment is an "extreme sanction," *Meehan,* 652 F.2d at 277, it should only be imposed upon a "'serious showing of willful default.'" *Tripmasters, Inc. v. Hyatt Int'l Corp.,* No. 82 Civ. 6792(JFK), 1984 WL 1057, at *2 (S.D.N.Y. Oct. 23, 1984) (quoting *Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1983)).

This Court outlined the pertinent law in the District Court for the Southern District of New York relating to willfulness of default in *In re FKF 3, LLC*, 501 B.R. 491 (S.D.N.Y. 2013). The *FKF* court wrote,

> Courts in this District have noted that the relevant inquiry for determining willfulness is the defaulting party's actions after it became aware of the existence of the litigation or entry of default. *See, e.g., In re FairPoint Comm'cns, Inc.,* 462 B.R. [75 ,] 81 [(Bankr.S.D.N.Y. 2012)]; *In re JWP Info. Servs., Inc.,* 231 B.R. 209, 212 (Bankr.S.D.N.Y.1999) ("It is [the party's] actions after he became aware of the existence of the Trustee's motion ... that reaches the level of willfulness."). Thus, even where notice was adequate and the defaulting party failed to rebut the presumption of receipt, if the party responded promptly after learning of the action, courts have found that the party's default was not willful. *See, e.g. In re FairPoint Comm'cns, Inc.,* 462 B.R. at 81 (holding that defendant's default was not willful where he filed a motion for reconsideration eleven days after discovering that an order had been issued against him); *In re Journal Register Co.,* No. 09–10769 (ALG), 2010 WL 5376278, at *1, *3 (Bankr.S.D.N.Y. Dec. 23, 2010) (finding that even where claimant's delay in responding was due to her attorney tardily discovering a "previously unreviewed Claim Objection" that was in his possession, the claimant did not act willfully "because she did not have actual knowledge [of

2

> the] proceeding and promptly sought relief"); *Tripmasters, Inc.,* 1984 WL 1057, at *3 (noting that the defaulting party "moved promptly to vacate the default judgment once it discovered that the judgment had been entered"); *see also Swarna v. Al–Awadi,* 622 F.3d 123, 142–43 (2d Cir.2010) (finding that default was not willful where defendants retained counsel one day after receiving the motion for default judgment and where counsel moved for an extension of time to respond one week later).

*FKF*, 501 B.R. at 502.  The *FKF* court went on to find a banker, who was properly served and negligently defaulted, nonetheless did not willfully default.  *Id.* at 502–503.  After considering the other *Enron* factors, the *FKF* Court vacated the default judgment against the banker.  *Id.* at 507–508.

In *Schlatter v. China Precision Steel, Inc.*, 296 F.R.D. 258 (S.D.N.Y. 2013), this Court considered a corporate defendant's motion to set aside default under Rule 55(c) where that defendant filed its motion two months after its answer was due, and one month after default was entered.  The corporate defendant claimed to have not received notice of plaintiff's action due to "inadvertent error."  The *Schlatter* court considered each of the *Enron* factors, finding the defendant's default to not be willful, and noted that the prejudice and meritorious defense factors also weighed in the defendant's favor.  *Schlatter*, 296 F.R.D. at 260–261.  With regard to the willfulness factor, the court wrote

> "Additionally, the motion must be granted on the merits.  The Second Circuit has interpreted "willfulness" in the context of a default to refer to conduct that is "more than merely negligent or careless."  *S.E.C. v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998).  Here the default was at most the product of negligence or carelessness. *See, e.g., American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.,* 92 F.3d 57, 61 (2d Cir. 1996) (willfulness [sic] not shown where defendant's failure to answer the complaint was "due to a filing mistake by its in-house counsel's clerk" that "went unnoticed for two months" and was "grossly negligent").

*Id.* at 261.

In the instant case, Defendant simply did not receive notice of Plaintiff's complaint from Plaintiff or from the New York Secretary of State.  *See* Kim Decl., Ex. 2 ¶¶5–6. Plaintiff initiated this action by serving the New York Secretary of State on March 14, 2019.  *See* Kim Decl., Ex. 2. Upon Plaintiff's petition, the clerk entered default for Plaintiff on April 22, 2019.  *See* Kim Decl. ¶9.  Defendant did not receive notice of the complaint from the Secretary of State.  Kim Decl., Ex. 2 ¶6.  Like the banker in *FKF*, Defendant took immediate action upon learning of the Complaint and pendency of default.  *See id.* at ¶4.  Defendant contacted its counsel, who then contacted Plaintiff's counsel, asking Plaintiff's counsel to stipulate to vacating default and to extend the time Defendant has to respond to the complaint.  *See* Kim Decl. ¶10; Kim Decl, Ex. 2 ¶4.  Defendant then filed this motion to set aside entry of default on May 1, 2019. Kim Decl.  Defendant's failure to receive the complaint in this case is just like the corporate defendant's inadvertent error in *Schlatter*.  Even if Defendant was negligent or careless, which it was not, this does not rise to the level of willfulness.  Further, Defendant filed its motion to set aside default much earlier than the defendant in *Schlatter*, which further supports setting aside the default.  Defendant's default in this case was not willful, but rather was inadvertent due to the defendant's failure to receive notice from the Secretary of State.

### III.     Plaintiff Will Not Be Prejudiced by Setting Aside the Entry of Default

Plaintiff will not be prejudiced by the setting aside by the entry of default.  Delay, standing alone, does not establish prejudice in the context of a Rule 55(c) motion to set aside a default.  *See Enron Oil*, 10 F.3d at 98.  "It must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Musler*, 713 F.2d at 916 (internal quotation marks omitted).

In the instant case, the clerk entered default against Defendant on April 22, 2019. Kim Decl. ¶13. Defendant's counsel reached out to opposing counsel on April 25, 2019. Kim Decl. ¶11. Defendant then filed this motion to set aside default on May 1, 2019. Kim Decl. Plaintiff could not suffer any prejudice because of Defendant's immediate action upon learning of the case. Plaintiff has not even petitioned this Court to for default judgment at this time of the filing of this motion. *See* Kim Decl. ¶12.

### IV.     Defendant Has Meritorious Defenses to Plaintiff's Allegations

To satisfy the criterion of presenting a meritorious defense, the defense need not be ultimately persuasive at this stage. *See, e.g., Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 51, 61 (2d Cir. 1996). "A defense is meritorious if it is good law so as to give the fact finder some determination to make." *Id.*

Defendant has meritorious defenses to the instant action. Plaintiff alleges that Defendant violated Plaintiff's rights under the Copyright Act by reproducing and publicly displaying the Plaintiff's photograph ("the Photo") on its website. *See* Kim Decl., Ex. A ¶13. Defendant has complete defenses to this allegation. First, the Photo's appearance on the Defendant's website falls within fair use as defined by Copyright Act's Fair Use provision, 17 U.S.C. § 107. Second, Defendant is protected by the Digital Millennium Copyright Act's ("DMCA") Safe Harbor provision, 17 U.S.C. § 512, since the Defendant did not publish the Photo, but merely provided the means of publication, without any knowledge of any potential copyright violation..

A) *Fair Use*

The Copyright Act's Fair Use provision allows for copyrighted material to be reproduced by those without license to use the copyrighted material. The Fair Use provision sets out factors for courts to consider when evaluating whether a given use of copyrighted work is fair use. The

factors are as follows: 1) the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes; 2) the nature of the copyrighted work; 3) the amount and substantiality of the portion used in relation the copyrighted work as a whole; and 4) the effect of the use upon the potential market for or value of the copyrighted work.  17 U.S.C. § 107.

> The determination of fair use is "an open-ended and context-sensitive inquiry," and thus the fair use doctrine calls for "case-by-case analysis[.]"  The four factors enumerated in the statute are non-exclusive and provide only "general guidance"; they are to be explored and weighed together, "in light of the purposes of copyright."

*Authors Guild, Inc. v. Google, Inc.*, 954 F.Supp.2d 282, 290 (S.D.N.Y. 2013) (internal citations omitted).  Defendant can invoke the "fair use defense" because the use was not for a commercial purpose, because the nature of the copyrighted work does not make it unusually susceptible to harm from use, and because the use had no or negligible impact on the potential market or value.

B) *DMCA Safe Harbor*

DCMA's Safe Harbor provision limits liability for service providers in various ways for indirect copyright infringement.  *See* 17 U.S.C. § 512.

> To qualify for protection under any of the safe harbors, a party must meet a set of threshold criteria. First, the party must in fact be a "service provider," defined, in pertinent part, as "a provider of online services or network access, or the operator of facilities therefor." 17 U.S.C. § 512(k)(1)(B). A party that qualifies as a service provider must also satisfy certain "conditions of eligibility," including the adoption and reasonable implementation of a "repeat infringer" policy that "provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network." *Id.* § 512(i)(1)(A). In addition, a qualifying service provider must accommodate "standard technical measures" that are "used by copyright owners to identify or protect copyrighted works." *Id.* § 512(i)(1)(B), (i)(2).

*Viacom Intern., Inc. v. YouTube, Inc.*, 676 F.3d 19, 27 (2d Cir. 2012).

Subsection (k)(1)(B) of the Safe Harbor provision defines "service provider" as a provider of online services or network access, or the operator of facilities therefor." *See id.* A photo-sharing internet company that hosts and allows online sharing of photos and videos at the direction of users, is a "service provider" under DCMA, as required to qualify for DMCA's "safe harbor" provisions. *See Wolk v. Kodak Imaging Network, Inc.*, 840 F.Supp.2d 724, 743–744 (S.D.N.Y. 2012). The DMCA's definition of "service provider" is intended to encompass a broad set of Internet entities. *See id.* at 744. Defendant operates a website that hosts and allows online sharing of photos and videos at the direction of users, and is therefore a service provider. Defendant also has a reasonable repeat infringer policy. Defendant's policy is to disable a user's account if the account has three posts that have been flagged for copyright violations within a one-year period. Kim Decl., Ex. 2 ¶18. Defendant also accommodates standard technical measures that are used by copyright owners to identify or protect copyrighted works. Defendant does not scrub pictures of metadata or take any other steps to make it more difficult for copyright owners to identify their work. *Id.* at ¶19. Defendant is entitled to the protection of DCMA's Safe Harbor provision.

Subsection (c)(1) provides a complete defense to liability for storage at the direction of a user of material that resided on a system or network controlled or operated by or for services providers that: 1) do not have actual knowledge that the material on the system or network is infringing; 2) are not aware of facts or circumstances from which infringing activity is apparent; 3) does not receive a financial benefit directly attributable to the infringing activity; and 4) respond expeditiously to remove or disable access to the material that is claimed to be infringing when notified of claimed infringement. *See* 17 U.S.C. § 512(c)(1).

In the instant case, Defendant did not have actual knowledge that the Photo was on his webpage and was copyrighted by Plaintiff. *See* Kim Decl., Ex. 2 ¶8. Defendant was also unaware

7

of any facts or circumstances that would make infringing activity apparent. *Id.* at ¶9. Defendant was not aware of that copyrighted material was posted on its website until it learned about this lawsuit. *See id.* at ¶8. Upon learning of the presence of copyrighted material from Plaintiff's counsel's email, Defendant expeditiously removed or disabled access to the webpage featuring the Photo. *Id.* at ¶7. Defendant did not receive a financial benefit directly attributable to the Photo. *Id.* at ¶¶12–13. Further, Defendant displays clearly on its website a phone number, email address, and its physical address, enabling easy communications between the public, including copyright owners, and Defendant. *Id.* at ¶14. Defendant has received dozens of communications from copyright owners via email and phone, and has addressed each of those issues. *Id.* at ¶16-17. Defendant is protected from liability related to storage of the Photo on Defendant's system or network at the direction of Defendant's users.

However, DCMA's Safe Harbor provision will not provide protection when the service provider has been informed by a copyright owner of the presence of the copyrighted content on his website and the service provider fails to remove or disable access to the copyrighted content. But in the instant case, Defendant received no notice from the Plaintiff prior to the initiation of this action. *See* Kim Decl., Ex. 3 ¶¶8–9. Plaintiff's counsel has infamously filed hundreds of copyright infringement law suits, and has been sanctioned for being a "copyright troll." *See* Kim Decl., Ex. 5.

## **CONCLUSION**

**WHEREFORE**, Defendant respectfully requests this Court set aside the clerk's entry of default for the Plaintiff and grant Defendant twenty-one days from the date of the Court's order to answer or move regarding the Summons and Complaint, and order any other further relief that this Court may deem just and proper.

Respectfully submitted
**KIM & BAE, P.C.**
*Attorneys for Defendant HeyKorean, Inc.*

/s/B.J. Kim, Esq.
B.J. Kim, Esq.

40-21 Bell Boulevard
2nd Floor
Bayside, NY 11361
      -and-
2160 N. Central Road, Suite 303
Fort Lee, NJ 07024
P: (201) 585-2288
E: bjkim@kimbae.com