UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THEODORE PARISIENNE,

                   Plaintiff,

      - against -                         19-CV-2257 (VSB)

HEYKOREAN, INC.,                    **OPINION & ORDER**

                   Defendant.
------------------------------------------------------------X

Appearances:

Richard Liebowitz
Liebowitz Law Firm, PLLC
Valley Stream, NY
*Counsel for Plaintiff*

Bong June Kim
Kim & Bae, P.C.
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      Before me is Defendant's unopposed motion to vacate its default. (Doc. 10.) Because Defendant has demonstrated good cause for the relief requested, its motion is GRANTED.

      **I.**     **Background**

      Plaintiff commenced this action on March 12, 2019 by filing a complaint asserting a single claim of copyright infringement under 17 U.S.C. §§ 106 and 501 against Defendant. (*See generally* Compl.[1]) Specifically, Plaintiff, a photographer, alleges that Defendant reproduced and displayed on its website a copyrighted photograph (the "Photograph") owned and registered by him. (Compl. ¶¶ 7–11.) On the same day the complaint was filed, Plaintiff also filed a

---

[1] "Compl." refers to the complaint filed on March 12, 2019. (Doc. 1.)

request for issuance of summons, (Doc. 2), and on March 13, 2019, a summons was issued, (Doc. 3). On April 22, 2019, Plaintiff filed an affidavit of service averring that Defendant was served on March 14, 2019 by delivering the summons and complaint to the Secretary of State of the State of New York. (Doc. 5.) Defendant's answer was therefore due by April 4, 2019. When Defendant did not answer or appear, Plaintiff sought a clerk's certificate of default, (*see* Docs. 6–7), which was issued on April 22, 2019, (Doc. 8).

On May 3, 2019, Defendant filed a motion to vacate the default. (Doc. 9.) The motion was rejected by the Clerk's Office on June 27, 2019 as incorrectly filed. Later that day, Defendant refiled its motion to vacate the default, (Doc. 10), along with the declaration of B.J. Kim (Doc. 11), counsel for Defendant, with exhibits, including the declaration of Defendant's authorized representative, Min Su Kang, (Doc. 11-1, at 10–12 ); and a memorandum of law in support, (Doc. 12).

Defendant contends that it did not receive the summons and complaint, but rather learned about the case when Plaintiff's counsel emailed Kang, Defendant's operations specialist, on April 22, 2019 to inform him that Defendant's answer was "due." (Kang Dec. ¶ 3–6.)[2] Kang asserts he immediately contacted Defendant's attorneys, (*id.* at 4), who in turn contacted Plaintiff's counsel on April 25, 2019, asking Plaintiff's consent to set aside the default. (Kim Dec. ¶ 10.)[3] According to Defendant's counsel, Plaintiff did not consent. (*Id.*) To date, Plaintiff has not moved for a default judgment nor has he opposed Defendant's motion.

---

[2] "Kang Dec." refers to the Declaration of Min Su Kang in Support of Defendant's Motion to Set Aside Entry of Default, filed on June 27, 2019, as Exhibit 3 to the Declaration of B.J. Kim in Support of Defendant's Motion to Set Aside Entry of Default. (Doc. 11-1, at 1, 10–12.)

[3] "Kim Dec." refers to the Declaration of B.J. in Support of Defendant's Motion to Set Aside Entry of Default, filed on June 27, 2019. (Doc. 11.)

## II. Motion to Vacate Default – Rule 55(c)

Where a default judgment has yet to be entered, Rule 55(c) of the Federal Rules of Civil Procedure governs a court's review of whether to vacate a defendant's default. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (Under Rule 55(c), "[a] court may set aside any default that has entered for good cause shown, and if a judgment has entered on the default, the court is authorized to set the judgment aside in accordance with the provisions of Rule 60(b)."); *Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 33 (2d Cir. 2012) (summary order) ("Rule 55(c) permits a party to be relieved of default 'for good cause,' whereas a default judgment may only be set aside in accordance with Rule 60(b).") Under Rule 55(c), a court may set aside an entry of default if it finds that good cause exists, Fed. R. Civ. P. 55(c), based on a review of the following factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented," *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *accord Peterson*, 467 F. App'x. at 33. The Second Circuit generally disfavors defaults and maintains a strong preference for resolving disputes on the merits. *See Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001). "[W]hen doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron*, 10 F.3d at 96.

### A. *Willfulness*

"A default should not be set aside when it is found to be willful." *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991) (discussing willfulness prong in context of motion to vacate default judgment), *cert. denied*, 503 U.S. 1006 (1992). "'Willfulness,' in the context of a default, refers to conduct that is *more* than merely negligent or careless." *Walden v. Lorcom Techs., Inc.*, No. 05-CV-3600 (ARR)(RER), 2007 WL 608151 at *3 (E.D.N.Y. Feb. 23, 2007)

(emphasis in original) (citing *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Willfulness may be found when, for example, a defaulting party acts deliberately, egregiously, or in bad faith. *See Argus Research Grp., Inc. v. Argus Sec., Inc.*, 204 F. Supp. 2d 529, 531–532 (E.D.N.Y. 2002); *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, Nos. 00-Civ-1898(SAS), 07 Civ. 9453(SAS), 2010 WL 3790828, at *2 n.29 (S.D.N.Y. Sept. 27, 2010). "Courts in this District have noted that the relevant inquiry for determining willfulness is the defaulting party's actions after it became aware of the existence of the litigation or entry of default." *In re FKF 3, LLC*, 501 B.R. 491, 502 (S.D.N.Y. 2013). "Thus, even where notice was adequate and the defaulting party failed to rebut the presumption of receipt, if the party responded promptly after learning of the action, courts have found that the party's default was not willful." *Id.* (citations omitted); *see also Swarna v. Al–Awadi*, 622 F.3d 123, 142–43 (2d Cir. 2010) (finding that default was not willful where defendants retained counsel one day after receiving the motion for default judgment and counsel moved for an extension of time to respond one week later).

Here, Defendant's authorized representative asserts that Defendant did not receive the summons and complaint from the Secretary of State, and found out about the action for the first time on April 22, 2019, when Plaintiff's counsel e-mailed him to inform him his answer was "due." (Kang Dec. ¶ 3–4.) Defendant's representative states that he immediately contacted Defendant's attorneys, who in turn state that they sought Plaintiff's consent to set aside the default shortly thereafter. (*Id.* ¶ 4; Kim Dec. ¶ 10.) When Plaintiff did not consent, Defendant promptly moved to vacate its default, filing its initial motion on May 3, 2019, nine days after it purportedly learned of the action.[4] The filing was rejected on June 27, 2019, and Defendant

---

[4] Defendant repeatedly asserts that it filed its motion on May 1, 2019, (*see* Def.'s Mem. 4, 5), but this is incorrect, based on my review of the ECF docket. "Def.'s Mem." refers to Defendant's Memorandum of Law in Support of

4

refiled its motion that same day. (*See* ECF Docket; Docs. 9–12.)

I find these sworn allegations of Defendant's prompt action upon learning about Plaintiff's claim to be sufficient to show that Defendant's default was not willful, particularly in the absence of any opposition from Plaintiff.

**B.** *Prejudice*

Delay alone does not establish the prejudice required to defeat a motion to vacate a default. *Johnson v. New York Univ.*, 324 F.R.D. 65, 71 (S.D.N.Y. 2018) (citing *Enron*, 10 F.3d at 98). "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Id.* (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). Here, Plaintiff has not even filed opposition to Defendant's motion, much less made a showing that the nine days that elapsed between the entry of default and the filing of Defendant's motion would cause him prejudice. This factor weighs in favor of Defendant. *Cf. Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 339 (S.D.N.Y. 2013) (opining that "it would be almost impossible to establish [] prejudice . . . [where] [Defendant] filed an appearance with the Court less than one month after [Plaintiff] filed its motion for a default judgment.").

**C.** *Meritorious Defense*

With regard to the meritorious defense factor, a movant need not show that its meritorious defense is "likel[y] . . . [to] carry the day," *Johnson*, 324 F.R.D. at 71–72 (quoting *Enron*, 10 F.3d at 98), but rather must "present evidence of facts that, if proven at trial, would constitute a complete defense." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004) (citation omitted); *cf. Peterson*, 467 F. App'x at 34 (affirming

---

Defendant's Motion to Set Aside Default, filed on June 27, 2019. (Doc. 12.)

entry of default where "defendants' motion to vacate . . . contained no facts, which, if proven at trial, would constitute a complete defense"). This defense must be "articulate[d] . . . with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a serious question as to the validity of those allegations." *FedEx TechConnect, Inc. v. OTI, Inc.*, No. 12 Civ. 1674(RJS), 2013 WL 5405699, at *8 (S.D.N.Y. Sept. 23, 2013) (internal quotation marks omitted). "A defense is meritorious if it is good law so as to give the fact finder some determination to make." *Am. Alliance Ins. Co.*, 92 F.3d at 61 (2d Cir. 1996) (citation omitted).

Here, Defendant easily meets this "low threshold." *Johnson*, 324 F.R.D. at 72 (citation omitted). Defendant asserts that the appearance of the Photograph on Defendant's website is not actionable as copyright infringement because it fell within the (1) fair use provision of the Copyright Act, 17 U.S.C. § 107, and (2) the safe harbor provisions of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512. (Def.'s Mem. 5–8.) Pursuant to 17 U.S.C. § 512(c), one of the safe harbor provisions of the DMCA, a service provider—defined as "a provider of online services or network access," 17 U.S.C. § 512(k)(1)—cannot be liable for copyright infringement solely based on its "storage at the direction of a user of material that resides on a system or network controlled or operated by . . . the service provider." 17 U.S.C. § 512(c). To qualify for this protection, the service provider is subject to certain general threshold requirements: it must have adopted and reasonably implemented "a 'repeat infringer' policy that 'provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network,'" *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 27 (2d Cir. 2012) (quoting 17 U.S.C. § 512(i)(1)(A)), and it must accommodate and not interfere with "'standard technical measures' that are 'used by copyright owners to identify or

6

protect copyrighted works.'" *Id.* (quoting 17 U.S.C 512(i)(1)(B), (i)(2)). The service provider must also satisfy certain requirements of the safe harbor provision contained in § 512(c), by showing that it:

> (A) (i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;
>
> (ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
>
> (iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;
>
> (B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and
>
> (C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

17 U.S.C. § 512(c)(1)(A)-(C).)

Defendant alleges that it runs a website on which users may post photos without input or approval from Defendant, and that it is therefore a service provider. (Kang Dec. ¶¶ 2, 7, 11; Def.'s Mem. 7.) In addition, Defendant asserts it has a repeat infringer policy of "disabl[ing] a user's account if the account has three or more posts that have been flagged for copyright violations in a one-year period," (Kang Dec. ¶ 18), and that it accommodates standard technical measures for copyright owners to identify their work and does not interfere with them, (*id.* ¶ 19). I find these allegations sufficient to satisfy both threshold criteria for safe harbor under the DMCA. *See Viacom Int'l, Inc.*, 676 F.3d at 27; *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 745 (S.D.N.Y. 2012) (finding Photobucket, a website that provided an online platform for users to upload and post material, to be eligible for safe harbor), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014).

7

Defendant has also satisfied the specific requirements of safe harbor under § 512(c), by alleging that: it did not have actual knowledge that the Photograph infringed on Plaintiff's copyright, nor was it aware of any facts or circumstances that would make the infringement apparent, (Kang Dec. ¶¶ 8–9); that, although Plaintiff did not contact Defendant about the posting of the Photograph prior to the commencement of this lawsuit, Defendant removed the Photograph immediately after being notified, (*id.* ¶ 7); and that Defendant did not receive a financial benefit from the posting of the Photograph, (*id.* ¶ 12). These allegations, "if proven at trial," would to show that Defendant is entitled to protection from liability by the DMCA's safe harbor provision, which "would constitute a complete defense" to Plaintiff's copyright infringement claim. *See State St. Bank & Trust Co.*, 374 F.3d at 167. Defendant's showing is therefore sufficient to satisfy the meritorious defense requirement of a motion to vacate a default. In addition, because Defendant need only assert "a" meritorious defense, *see id.*, not multiple such defenses, I need not and do not evaluate the merits of its fair use defense at this time.

### III. Conclusion

For the foregoing reasons, Defendant's unopposed motion to vacate its default, (Doc. 10), is GRANTED. Defendant is directed to answer, move, or otherwise respond to the complaint on or before November 25, 2019.

The Clerk of Court is respectfully directed to terminate the motion at Document 10.

SO ORDERED.

Dated: November 26, 2019
      New York, New York

*(signature)*
Vernon S. Broderick
United States District Judge